## IN THE UNITED STATES DISTRICT COURT
### WESTERN DISTRICT OF TEXAS
### AUSTIN DIVISION

| | |
|---|---|
| AURIGA INNOVATIONS, INC. | C.A. No. 6:20-cv-779 |
| Plaintiff, | |
| v. | **JURY TRIAL DEMANDED** |
| INTEL CORPORATION, HP INC., and HEWLETT PACKARD ENTERPRISE COMPANY, | |
| Defendants | |

## COMPLAINT

Plaintiff Auriga Innovations, Inc. ("Auriga" or "Plaintiff") files this complaint for patent infringement against Defendants Intel Corporation ("Intel"), HP Inc. ("HPI"), and Hewlett Packard Enterprise Company ("HPE") (collectively, "Defendants") under 35 U.S.C. § 217 *et seq*. as a result of Defendants' unauthorized use of Auriga's patents and alleges as follows:

## THE PARTIES

1.      Auriga is a corporation organized and existing under the laws of the state of Delaware with its principal place of business at 1891 Robertson Road, Suite 100, Ottawa, ON K2H 5B7 Canada.

2.      On information and belief, Intel is a Delaware corporation with a place of business at 2200 Mission College Boulevard, Santa Clara, California 95054.

3.      On information and belief, since April 1989, Intel has been registered to do business in the State of Texas under Texas Taxpayer Number 19416727436 and has places of business at

1300 S Mopac Expressway, Austin, Texas 78746; 6500 River Place Blvd, Bldg 7, Austin, Texas 78730; and 5113 Southwest Parkway, Austin, Texas 78735 (collectively, "Intel Austin Offices"). https://www.intel.com/content/www/us/en/location/usa.html.

4.      On information and belief, HPI is a Delaware corporation with a principal place of business at 1501 Page Mill Road, Palo Alto, CA 94304.

5.      On information and belief, HPI formally registered to do business in the State of Texas under Texas SOS file Number 0012093906 in May 1998, and, since at least as early as 2016, HPI has had an established place of business in this judicial district with a physical office at 3800 Quick Hill Rd. #100, Austin, TX 78728.

6.      On information and belief, HPE is a corporation organized under the laws of the State of Delaware, with its principal place of business at 6280 America Center Drive, San Jose, California, 95002.

7.      On information and belief, HPE formally registered to do business in the State of Texas SOS file Number 0802175187 in March 2015 and has a place of business at 14231 Tandem Blvd, Austin, Texas 78728. https://www.hpe.com/us/en/contact-hpe.html#location.

## JURISDICTION AND VENUE

8.      This action arises under the patent laws of the United States, Title 35 of the United States Code. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

9.      Intel is subject to this Court's specific and general personal jurisdiction, in accordance with due process and/or the Texas Long Arm Statute because, in part, Intel "[r]ecruits Texas residents, directly or through an intermediary located in this state, for employment inside or outside this state." *See* Tex. Civ. Prac. & Rem. Code § 17.042.

10.     Additionally, this Court has specific personal jurisdiction over Intel because it committed and continues to commit acts of infringement in this judicial district in violation of 35 U.S.C. § 271(a), (b), and (g). In particular, Intel has made, used, offered to sell, and sold products and systems in this judicial district, including infringing microprocessors.

11.     In addition, and on information and belief, Intel is subject to the Court's general jurisdiction because it regularly conducts and solicits business or otherwise engages in other persistent courses of conduct in this district, and/or because it derives substantial revenue from the sale and distribution of goods and services provided to individuals and businesses in this district.

12.     In sum, this Court has specific and general personal jurisdiction over Intel because, *inter alia*, Intel, on information and belief: (1) has substantial, continuous, and systematic contacts with this State and this judicial district; (2) owns, manages, and operates facilities in this State and this judicial district; (3) enjoys substantial income from sales in this State and this judicial district; (4) employs Texas residents in this State and this judicial district, and (5) markets products in this State and judicial district.

13.     Venue is proper in this district under 28 U.S.C. § 1400(b) as to Defendant Intel. Intel is registered to do business in Texas, and upon information and belief, Defendant has transacted business in this district and has committed acts of direct and indirect infringement in this district by, among other things, making, using, offering to sell, and selling products that infringe the asserted patents. Defendant has a regular and established place of business in the district, including offices at 1300 S MoPac Expressway, Austin, Texas 78746; 6500 River Place Blvd, Bldg 7, Austin, Texas 78730; and 5113 Southwest Parkway, Austin, Texas 78735. https://www.intel.com/content/www/us/en/location/usa.html.

14.     Affixed to the exterior of the Intel Austin Offices is large and clear signage that reads "Intel" as shown in the image below:



15.     On information and belief, Intel uses each of its Austin offices as a regular and established place of business because this is where numerous important employees work, including engineers who work on the Intel microprocessors accused of infringement in this action. Intel's website describes that "Intel's Austin facility is a research and development center for more than 1700 employees who innovate at the boundaries of technology to make amazing experiences possible    for    business    and    society,    and    for    every    person    on    Earth." https://www.intel.com/content/www/us/en/corporate-responsibility/intel-in-texas.html.

16.     Intel, directly and/or through its agents, advertises in this district and, through its website and other websites, offers to sell, sells, and/or distributes its products in this district and/or has induced the sale and use of its products in this district. This includes distribution to HPI and HPE as described below.

17.      HPI is subject to this Court's specific and general personal jurisdiction, in accordance with due process and/or the Texas Long Arm Statute because, in part, HPI "recruits Texas residents, directly or through an intermediary located in this state, for employment inside or outside this state." *See* Tex. Civ. Prac. & Rem. Code § 17.042; https://jobs.hp.com/en-us/showjob/jobid/1921/productsecurityengineer?prefilters=none&CloudSearchLocation=none&CloudSearchValue=none.

18.      Additionally, this Court has specific personal jurisdiction over HPI because it committed and continues to commit acts of infringement in this judicial district in violation of 35 U.S.C. § 271(a) and (g). In particular, HPI has made, used, offered to sell, and sold products and systems in this judicial district, including infringing desktop and laptop computers incorporating infringing microprocessors from Defendant Intel.

19.      In addition, and on information and belief, HPI is subject to the Court's general jurisdiction because it regularly conducts and solicits business or otherwise engages in other persistent courses of conduct in this district, and/or because it derives substantial revenue from the sale and distribution of goods and services provided to individuals and businesses in this district.

20.      In sum, this Court has specific and general personal jurisdiction over HPI because, *inter alia*, HPI, on information and belief: (1) has substantial, continuous, and systematic contacts with this State and this judicial district; (2) owns, manages, and operates facilities in this State and this judicial district; (3) enjoys substantial income from sales in this State and this judicial district; (4) employs Texas residents in this State and this judicial district, and (5) markets products in this State and judicial district.

21.      Venue is proper in this district under 28 U.S.C. § 1400(b) as to Defendant HPI. HPI is registered to do business in Texas, and upon information and belief, Defendant has transacted

business in this district and has committed acts of direct and indirect infringement in this district by, among other things, making, using, offering to sell, selling, and importing products that infringe the asserted patents. Defendant has a regular and established place of business in the district, including offices at 3800 Quick Hill Road #100, Austin, Texas 78728. Affixed to the exterior of the Austin Office is large and clear signage that reads "HP" as shown in the image below:



22.     On information and belief, HPI uses its Austin office as a regular and established place of business because this is where numerous important employees work, including, but not limited to a Director of IT, a Director of Governmental Affairs, software and hardware engineers, and other engineers.

23.     Moreover, consumers in this district are able to purchase infringing laptop and desktop computers from HPI through its online website at https://store.hp.com/us/en. HPI, directly and/or through its agents, advertises in this district and, through its website and other websites, offers to sell, sells, and/or, distributes its products in this district and/or has induced the sale and use of its products in this district.

24.     In addition, upon information and belief, HPI, either directly or through its agents, distributes, markets, delivers and sells, among other products, infringing laptop and desktop computers within this judicial district through many stores in Waco, Austin, and San Antonio and the surrounding area, such as Best Buy, S.P. Richards Co., Staples Inc., and Fry's Electronics.

25.     On information and belief, HPI derives substantial revenue from the sale of infringing laptop and desktop computers distributed to and within this district.

26.     On information and belief, HPI has previously litigated at least one patent infringement case before this court without contesting jurisdiction and venue. *See Iron Oak Technologies, LLC v. HP Inc.*, Case No. 1:17-cv-01068, W.D. Texas.

27.     HPE is subject to this Court's specific and general personal jurisdiction, in accordance with due process and/or the Texas Long Arm Statute because, in part, HPE "recruits Texas residents, directly or through an intermediary located in this state, for employment inside or outside this state." *See* Tex. Civ. Prac. & Rem. Code § 17.042; https://careers.hpe.com/job/Hewlett-Packard-Enterprise-Austin-Texas/112221816.

28.     Additionally, this Court has specific personal jurisdiction over HPE because it committed and continues to commit acts of infringement in this judicial district in violation of 35 U.S.C. § 271(a) and (g). In particular, HPE has made, used, offered to sell, and sold products and systems in this judicial district, including infringing server computers incorporating infringing microprocessors from Defendant Intel.

29.     In addition, and on information and belief, HPE is subject to the Court's general jurisdiction because it regularly conducts and solicits business or otherwise engages in other persistent courses of conduct in this district, and/or because it derives substantial revenue from the sale and distribution of goods and services provided to individuals and businesses in this district.

30.     In sum, this Court has specific and general personal jurisdiction over HPE because, *inter alia*, HPE, on information and belief: (1) has substantial, continuous, and systematic contacts with this State and this judicial district; (2) owns, manages, and operates facilities in this State and this judicial district; (3) enjoys substantial income from sales in this State and this judicial district; (4) employs Texas residents in this State and this judicial district, and (5) markets products in this State and judicial district.

31.     Venue is proper in this district under 28 U.S.C. § 1400(b) as to Defendant HPE. HPE is registered to do business in Texas, and upon information and belief, Defendant has transacted business in this district and has committed acts of direct and indirect infringement in this district by, among other things, making, using, offering to sell, selling, and importing products that infringe the asserted patents. Defendant has a regular and established place of business in the district, including offices at 14231 Tandem Blvd, Austin, Texas 78728. At the entrance of the Austin Office is a clear signage that reads "Hewlett Packard Enterprise" as shown in the image below:



32.     On information and belief, HPE uses its Austin office as a regular and established place of business because this is where numerous important employees work, including, but not limited to a Director & Associate General Counsel, VP and GM Data Center Networking, software and hardware engineers, and other engineers.

33.     Moreover, consumers in this district are able to purchase infringing server computers from HPE through its online website at https://buy.hpe.com/us/en/. HPE, directly and/or through its agents, advertises in this district and, through its website and other websites, offers to sell, sells, and/or distributes its products in this district and/or has induced the sale and use of its products in this district.

34.     On information and belief, HPE derives substantial revenue from the sale of infringing server computers distributed to and within this district.

9

**THE PATENTS-IN-SUIT**

35.     Auriga is the owner of U.S. Patent No. 7,888,736 (the "736 Patent"), entitled "MUGFET with Optimized Fill Structures," which issued February 15, 2011. A copy of the 736 Patent is attached to this complaint as Exhibit 1.

36.     Auriga is the owner of U.S. Patent No. 7,763,932 (the "932 Patent), entitled "Multi-Bit High-Density Memory Device and Architecture and Method of Fabricating Multi-Bit High-Density Memory Devices," which issued on July 27, 2010. A copy of the 932 Patent is attached to this complaint as Exhibit 2.

37.     Auriga is the owner of U.S. Patent No. 9,000,537 (the "537 Patent"), entitled "FinFET Devices Having Recessed Liner Materials to Define Different Fin Heights," which issued on April 7, 2015. A copy of the 537 Patent is attached to this complaint as Exhibit 3.

38.     Auriga is the owner of U.S. Patent No. 8,957,479 (the "479 Patent"), entitled "Formation of Multi-Height MugFET," which issued on February 17, 2015. A copy of the 479 Patent is attached to this complaint as Exhibit 4.

39.     Auriga is the owner of U.S. Patent No. 8,234,594 (the "594 Patent"), entitled "Redundant Micro-Loop Structure for Use in an Integrated Circuit Physical Design Process and Method of Forming the Same," which issued on July 31, 2012. A copy of the 594 Patent is attached to this complaint as Exhibit 5.

40.     Auriga is the owner of U.S. Patent No. 8,901,738 (the "738 Patent"), entitled "Method of Manufacturing an Enhanced Electromigration Performance Hetero-Junction Bipolar Transistor," which issued on December 2, 2014. A copy of the 738 Patent is attached to this complaint as Exhibit 6.

41.     Auriga is the owner of U.S. Patent No. 9,362,229 (the "229 Patent"), entitled "Semiconductor Devices with Enhanced Electromigration Performance," which issued on June 7, 2016. A copy of the 229 Patent is attached to this complaint as Exhibit 7.

42.     Auriga is the assignee and owner of all right, title and interest to the 736, 932, 537, 479, 594, 738, and 229 Patents. Auriga has the legal right to enforce these patents, sue for infringement, and seek equitable relief and damages.

## **BACKGROUND**

43.     To meet the demand for ever-more-powerful microprocessor devices with lower power requirements, engineers have long sought to increase the number of transistors—the basic building block of computing devices—that can be packed into the same area, typically by shrinking the size of their components and reducing the distance between them. In accordance with the well-known "Moore's Law," which predicts that the number of transistors in a dense integrated circuit will double about every two years, the size of these structures has continued to shrink dramatically. As an example, today's Intel microprocessors can include more than 100 million transistors in each square millimeter of chip, up from approximately 3 million per square millimeter in 2007. https://newsroom.intel.com/newsroom/wp-content/uploads/sites/11/2017/03/Kaizad-Mistry-2017-Manufacturing.pdf.

44.     To create ever-denser chips with smaller components, semiconductor manufacturers have moved rapidly from one semiconductor fabrication process technology, or microarchitecture, to another. These microarchitectures are typically named for characteristic sizes or distances between structures on a chip. Most Intel microprocessors are currently fabricated at what Intel characterizes as a 14 nanometer ("14nm") microarchitecture. From 2000, preceding Intel microarchitectures included 180nm, 130nm, 90nm, 65nm, 45nm, and 22nm.

45.     Keeping up with Moore's law creates significant engineering problems. As the size of semiconductor components shrinks and density increases, the difficulty in fabrication of semiconductor products significantly increases and numerous significant operational problems for the resultant semiconductor devices are introduced, such as parasitic resistances and capacitances, heat issues, interconnect delays as electrical resistance increases as wires shrink, and "short-channel effects," which occur when the length of the channel becomes comparable to the depletion layer widths of the source and drain junctions.

46.     One response to these issues has been an industry-wide movement away from so-called planar architectures, in which the gate of a metal-oxide-semiconductor field-effect transistor (MOSFET) sits atop a conductive channel, to a three-dimensional or "multigate" architecture, in which the gate is placed on multiple sides of the channel and controls the channel current at each such side to perform switching. These latter devices are typically referred to as FinFETs because the conducting channel forms characteristic fins on the silicon surface that are in contact with the gate on three sides. FinFET devices have significantly faster switching times and offer higher current density than planar technology.

47.     The 736 Patent is directed to an efficient architecture for a FinFET integrated circuit device that solves problems inherent in the fabrication of nano-scale devices. The 736 Patent notes that "[u]niformity is becoming more and more critical as lithography is severely challenged" by increasing density, resulting in "local non-uniformities" in the resulting semiconductor structure. 736 Patent, 1:12-15. The 736 Patent addresses these issues through an innovative structure that includes on the semiconductor surface ***active*** FinFET structures and ***inactive*** FinFET fill structures between the active structures, in which the gates of the active and inactive structures are parallel and have the same pitch.

48.     The 932 Patent is directed to a memory structure that helps prevent "pattern-mismatch" during semiconductor processing to allow for increased density of memory devices. The 932 Patent explains that "pattern-mismatch" occurs "when normal photolithographic groundrule and sub-photolithographic groundrule structures are used in the same structure" and "can cause yield loss and imperfect connections." 932 Patent, 1:22-26. The 932 Patent addresses pattern-mismatch by an innovative structure that has groups of staggered nano-fins, where each group of nano-fins have a common contact, the contacts being on different sides of the staggered groups of nano-fins, and each group of nano-fins have at least two gates to electrically control the conductance of the nano-fins.

49.     The 537 Patent generally relates to FinFET devices having different fin heights defined by trenches having liner material with different thicknesses. The 537 Patent teaches incorporating differences in recessing of liner materials to create differences in fin height to provide greater flexibility in FinFET design which may contribute to the goals of "increased performance and lower production cost." *See* 537 Patent at 2:56-3:5.

50.     The 479 Patent generally relates to FinFET devices having rectangular fins of different heights and a certain structure of trenches and gates that are part of the FinFET device. The particular structures disclosed in the 479 Patent are inventions in which "different shapes and surfaces are utilized to increase density." *See* 479 Patent at 1:13-17.

51.     Another response to the issues created by following Moore's Law is fabricating structures to allow for greater accuracy and reliability. The 594 Patent generally relates to a redundant micro-loop structure for use in an integrated circuit physical design process and method of forming the same. The 594 Patent discloses structures in which redundant vias are used "in an

integrated circuit physical design process, in order to reduce the complexity of the manufacturing process, maintain high wiring density, and maximize manufacturing yield." *See id*. at 1:33-37.

52.     Furthermore, electromigration (EM)—referring to a certain type of unwanted movement of materials in a semiconductor device—decreases the reliability of an integrated circuit, including possible loss of connections or failure of the circuit. *See* 738 Patent at 1:14-45. EM effects become more pronounced with smaller integrated circuits where metal line widths are small and the current is high. *See generally id.* at 1:24-26, 1:33-43. The 738 Patent relates generally to reducing EM issues in a semiconductor device through use of a staple structure, where a staple structure in its most simple form is a conductive bar connecting two or more vias on a metal line in electrical contact with the device, such that current passing through the metal line will also pass through the vias and the conductive bar. The 738 Patent is directed to methods for forming a staple structure in a semiconductor device.

53.     The 229 Patent relates generally to reducing electromigration (EM) issues in a semiconductor device through use of a staple structure, as described above in paragraph 52 in relation to the 738 Patent. The 229 Patent is directed to the staple structure in a semiconductor device.

## DEFENDANTS' ACTS OF INFRINGEMENT

54.     Intel has made, used, sold, and offered for sale and continues to make, use, sell, and offer to sell in the United States microprocessor products fabricated at a 14++ nm or smaller microarchitecture which incorporate FinFET (called Tri-Gate by Intel) technology that infringe at least one claim of each of the Asserted Patents. Infringing Intel microprocessors fabricated at the 14++ nm microarchitecture node include (by way of example only) microprocessors in the Coffee Lake, Whiskey Lake, Amber Lake, and Comet Lake families, which further include (by way of example only) processor models 8300H (Coffee Lake), 8665U (Whiskey Lake), 8510Y (Amber

Lake), and 10710U (Comet Lake). Infringing Intel microprocessors fabricated at the 10nm process node include (by way of example only) microprocessors in the Cannon Lake and Ice Lake families, which further include (by way of example only) processor models 8121U (Cannon Lake) and 1065G7 (Ice Lake). Collectively, the Intel microprocessor products fabricated at a 14++ nm or smaller microarchitecture are referred to as the Intel Accused Products.

55.      Defendant HPI has made, used, sold, and offered for sale and continues to make, use, sell, and offer to sell in the United States products that infringe at least one claim of each Asserted Patent because they incorporate the Intel Accused Products, including laptops, notebooks, desktops, and all-in-one PCs. Infringing HPI laptop and notebook products include (by way of example only) HPI Pavilion, Spectre, Envy, Elite, Omen, and Elitebook laptops, including (by way of example only) the following models: Spectre x360 (now incorporating Intel Core i7 1065G7 "Ice Lake" microprocessor), Pavilion 15t (now incorporating Intel Core i7 1065G7 "Ice Lake" microprocessor), Envy x 360 (now incorporating Intel Core i7 10510U "Comet Lake" microprocessor), Omen 17t (now incorporating Intel Core i5 10300H "Comet Lake microprocessor), and EliteBook 850 G6 (now incorporating Intel Core i7 10510U "Comet Lake" microprocessor). Infringing HPI desktop and all-in-one PC products include (by way of example only) the Envy, Omen, EliteDesk, Pavilion, Prodesk and Z Workstation families, including (by way of example only) the following models: Envy All-In-One 32-a0035 (now incorporating Intel Core i5 9400 "Coffee Lake" microprocessor), Omen Obelisk Desktop 875-1055XT (now incorporating Intel Core i7 9700K "Coffee Lake" microprocessor), EliteDesk 800 G5 (now incorporating Intel Core i7 9700 "Coffee Lake" microprocessor), Pavilion TG01-0160xt (now incorporating Intel Core i7 9700 "Coffee Lake" microprocessor), and Prodesk 600 G5 Desktop Mini PC (now incorporating Intel Core i7 9700T "Coffee Lake" microprocessor). Collectively, these products, which infringe at least

one claim of each Asserted Patent because they incorporate an Intel Accused Product, are referred to as the HPI Accused Products.

56.     Defendant HPE has made, used, sold, and offered for sale and continues to make, use, sell, and offer to sell in the United States products that infringe at least one claim of each Asserted Patent because such products incorporate the Intel Accused Products, including server computers. Infringing HPE server products include (by way of example only) ProLiant Servers including (by way of example only) the following models: ProLiant DL20 Gen10 Server (now incorporating Intel Xeon E-2224 "Coffee Lake" microprocessor), ProLiant ML30 Gen10 Server (now incorporating Intel Xeon E-2224 "Coffee Lake" microprocessor), and ProLiant MicroServer Gen 10 Plus (now incorporating Intel Xeon E-2224 "Coffee Lake" microprocessor). Collectively, these products, which infringe at least one claim of each Asserted Patent because they incorporate an Intel Accused Product, are referred to as the HPE Accused Products.

57.     Collectively, the Intel Accused Products, HPI Accused Products, and HPE Accused Products are referred to as the Accused Products. Further discovery may reveal additional infringing Accused Products.

58.     Defendants' acts of infringement have damaged Plaintiff. Plaintiff is entitled to recover from Defendants the damages Plaintiff incurred and is continuing to incur as a result of Defendants' wrongful acts.

### CAUSES OF ACTION

### COUNT ONE: Infringement of U.S. Patent No. 7,888,736

59.     Auriga incorporates by reference each of the allegations in the paragraphs above and further alleges as follows:

60.     Defendants have directly infringed (literally and equivalently) at least one claim of the 736 Patent under 35 U.S.C. § 271(a) by making, using, offering to sell, and selling the Accused

Products. Defendants have infringed claims of the 736 Patent, including independent Claims 1 and 2.

61.     Intel directly infringes the 736 Patent. By way of example only, a representative Intel Accused Product, the Intel 14nm++ i5-8400 Coffee Lake BX80684I58400 Processor, infringes an exemplary claim of the 736 Patent, as in the description set forth in the claim chart attached hereto as Exhibit 8, which Auriga provides without the benefit of information about the accused device obtained through discovery.

62.     HPI directly infringes the 736 Patent by making, using, offering to sell, and selling HPI Accused Products that incorporate the Intel Accused Products. By way of example only, a representative HPI Accused Product, the ZBook 15v G5 Mobile Workstation, incorporates an Intel 14nm++ i5-9300H Coffee Lake Processor. Accordingly, HPI Accused Products infringe the 736 Patent in the same way as the Intel Accused Products, as described in Exhibit 8.

63.     HPE directly infringes the 736 Patent by making, using, offering to sell, and selling HPE Accused Products that incorporate the Intel Accused Products. By way of example only, a representative HPE Accused Product, the ProLiant DL20 Gen 10 Server incorporates an Intel 14nm++ Xeon E-2224 Coffee Lake Processor. Accordingly, HPE Accused Products infringe the 736 Patent in the same way as the Intel Accused Products, as described in Exhibit 8.

64.     On information and belief, Intel has actively induced and continues to actively induce infringement of one or more claims of the 736 Patent, including but not limited to Claims 1 and 2, pursuant to 35 U.S.C. § 271(b). Such inducement includes without limitation, with specific intent to encourage the infringement, knowingly inducing third parties such as OEMs, including Defendants HPI and HPE, to incorporate the Intel Accused Products into desktop, laptop, and server computers, such as the HPI and HPE Accused Products. Intel advertises and encourages, through

marketing and sales efforts, these entities to incorporate its infringing microprocessors in their products. For example, Intel's website states "Intel designs advanced, high-performance processors for every usage, including enterprise-scale servers, IoT devices, laptops, desktops, workstations, and mobile devices. Find the technology you need here." https://www.intel.com/content/www/us/en/products/processors.html; *see also, e.g.*, https://www.intel.com/content/www/us/en/products/docs/processors/core/10th-gen-processors.html; https://www.intel.com/content/www/us/en/benchmarks/intel-data-center-performance.html. Intel also encourages third parties to incorporate its infringing microprocessors by designing and packaging Intel's microprocessor products to be easily integrated into third party desktop, laptop, and server computers, including by adopting standard packaging and socket types that will accept the Accused Intel Products. *See, e.g.* https://www.intel.sg/content/www/xa/en/support/articles/000055173/processors.html?wapkw=socket%20information; https://www.intel.sg/content/www/xa/en/support/articles/000005670/processors.html.

65.     Intel has actual knowledge of the 736 Patent since at least the service upon Intel of this Complaint. By the time of trial, Intel will have known and intended (since receiving such notice) that its continued actions would infringe and actively induce and contribute to the infringement of one or more claims of the 736 Patent.

66.     As a result of Intel's marketing, advertising, instruction, and sales, other entities, including HPI and HPE, incorporate the infringing microprocessors into their desktops, laptops, and server computers and therefore directly infringe the asserted claims of the 736 Patent, literally or under the doctrine of equivalents, for the reasons stated above.

67.     Auriga has been damaged by Defendants' infringement of the 736 Patent and is entitled to damages as provided for in 35 U.S.C. § 284, including reasonable royalty damages.

**COUNT TWO: Infringement of U.S. Patent No. 7,763,932**

68.     Auriga incorporates by reference each of the allegations in the paragraphs above and further alleges as follows:

69.     Defendants have directly infringed (literally and equivalently) at least one claim of the 932 Patent under 35 U.S.C. § 271(a) by making, using, offering to sell, and selling the Accused Products. Defendants have infringed multiple claims of the 932 Patent, including Claims 1, 4, and 5.

70.     Intel directly infringes the 932 Patent. By way of example only, a representative Intel Accused Product, the Intel 14nm++ i5-8400 Coffee Lake BX80684I58400 Processor, infringes an exemplary claim of the 932 Patent, as in the description set forth in the claim chart attached hereto as Exhibit 9 which Auriga provides without the benefit of information about the accused device obtained through discovery.

71.     HPI directly infringes the 932 Patent by making, using, offering to sell, and selling HPI Accused Products that incorporate the Intel Accused Products. By way of example only, a representative HPI Accused Product, the ZBook 15v G5 Mobile Workstation, incorporates an Intel 14nm++ i5-9300H Coffee Lake Processor. Accordingly, HPI Accused Products infringe the 932 Patent in the same way as the Intel Accused Products, as exemplified in Exhibit 9.

72.     HPE directly infringes the 932 Patent by making, using, offering to sell, and selling HPE Accused Products that incorporate the Intel Accused Products. By way of example only, a representative HPE Accused Product, the ProLiant DL20 Gen 10 Server incorporates an Intel 14nm++ Xeon E-2224 Coffee Lake Processor. Accordingly, HPE Accused Products infringe the 932 Patent in the same way as the Intel Accused Products as exemplified in Exhibit 9.

73.     On information and belief, Intel has actively induced and continues to actively induce infringement of one or more claims of the 932 Patent, including but not limited to Claims 1,

4 and 5, pursuant to 35 U.S.C. § 271(b). Such inducement includes without limitation, with specific intent to encourage the infringement, knowingly inducing third parties such as OEMs, including Defendants HPI and HPE, to incorporate the Intel Accused Products into desktop, laptop, and server computers, such as the HPI and HPE Accused Products. Intel advertises and encourages, through marketing and sales efforts, these entities to incorporate its infringing microprocessors in their products. For example, Intel's website states "Intel designs advanced, high-performance processors for every usage, including enterprise-scale servers, IoT devices, laptops, desktops, workstations, and mobile devices. Find the technology you need here." https://www.intel.com/content/www/us/en/products/processors.html; *see also, e.g.*, https://www.intel.com/content/www/us/en/products/docs/processors/core/10th-gen-processors.html; https://www.intel.com/content/www/us/en/benchmarks/intel-data-center-performance.html. Intel also encourages third parties to incorporate its infringing microprocessors by designing and packaging Intel's microprocessor products to be easily integrated into third party desktop, laptop, and server computers. *See, e.g.* https://www.intel.sg/content/www/xa/en/support/articles/000055173/processors.html?wapkw=socket%20information; https://www.intel.sg/content/www/xa/en/support/articles/000005670/processors.html.

74.     Intel has actual knowledge of the 932 Patent since at least the service upon Intel of this Complaint. By the time of trial, Intel will have known and intended (since receiving such notice) that its continued actions would infringe and actively induce and contribute to the infringement of one or more claims of the 932 Patent.

75.     As a result of Intel's marketing, advertising, instruction, and sales, other entities, including HPI and HPE, incorporate the infringing microprocessors into their desktops, laptops, and

server computers and therefore directly infringe the asserted claims of the 932 Patent, literally or under the doctrine of equivalents, for the reasons stated above.

76.     Auriga has been damaged by Defendants' infringement of the 932 Patent and is entitled to damages as provided for in 35 U.S.C. § 284, including reasonable royalty damages.

### COUNT THREE: Infringement of U.S. Patent No. 9,000,537

77.     Auriga incorporates by reference each of the allegations in the paragraphs above and further alleges as follows:

78.     Defendants have directly infringed (literally and equivalently) at least one claim of the 537 Patent under 35 U.S.C. § 271(a) by making, using, offering to sell, and selling the Accused Products. Defendants have infringed multiple claims of the 537 Patent, including Claims 1-3, 5, 6, 11-13, and 15-17.

79.     Intel directly infringes the 537 Patent. By way of example only, a representative Intel Accused Product, the Intel 14nm++ i5-8400 Coffee Lake BX80684I58400 Processor, infringes an exemplary claim of the 537 Patent, as in the description set forth in the claim chart attached hereto as Exhibit 10 which Auriga provides without the benefit of information about the accused device obtained through discovery.

80.     HPI directly infringes the 537 Patent by making, using, offering to sell, and selling HPI Accused Products that incorporate the Intel Accused Products. By way of example only, a representative HPI Accused Product, the ZBook 15v G5 Mobile Workstation, incorporates an Intel 14nm++ i5-9300H Coffee Lake Processor. Accordingly, HPI Accused Products infringe the 537 Patent in the same way as the Intel Accused Products as exemplified in Exhibit 10.

81.     HPE directly infringes the 537 Patent by making, using, offering to sell, and selling HPE Accused Products that incorporate the Intel Accused Products. By way of example only, a representative HPE Accused Product, the ProLiant DL20 Gen 10 Server incorporates an Intel

14nm++ Xeon E-2224 Coffee Lake Processor. Accordingly, HPE Accused Products infringe the 537 Patent in the same way as the Intel Accused Products as exemplified in Exhibit 10.

82.     On information and belief, Intel has actively induced and continues to actively induce infringement of one or more claims of the 537 Patent, including but not limited to Claims 1-3, 5, 6, 11-13, and 15-17, pursuant to 35 U.S.C. § 271(b). Such inducement includes without limitation, with specific intent to encourage the infringement, knowingly inducing third parties such as OEMs, including Defendants HPI and HPE, to incorporate the Intel Accused Products into desktop, laptop, and server computers, such as the HPI and HPE Accused Products. Intel advertises and encourages, through marketing and sales efforts, these entities to incorporate its infringing microprocessors in their products. For example, Intel's website states "Intel designs advanced, high-performance processors for every usage, including enterprise-scale servers, IoT devices, laptops, desktops, workstations, and mobile devices. Find the technology you need here." ; *see also, e.g.*, https://www.intel.com/content/www/us/en/products/docs/processors/core/10th-gen-processors.html;           https://www.intel.com/content/www/us/en/benchmarks/intel-data-center-performance.html. Intel also encourages third parties to incorporate its infringing microprocessors by designing and packaging Intel's microprocessor products to be easily integrated into third party desktop, laptop, and server computers. *See, e.g.* https://www.intel.sg/content/www/xa/en/support/articles/000055173/processors.html?wapkw=socket%20information; https://www.intel.sg/content/www/xa/en/support/articles/000005670/processors.html.

83.     Intel has actual knowledge of the 537 Patent since at least the service upon Intel of this Complaint. By the time of trial, Intel will have known and intended (since receiving such notice) that its continued actions would infringe and actively induce and contribute to the infringement of one or more claims of the 537 Patent.

84.     As a result of Intel's marketing, advertising, instruction, and sales, other entities, including HPI and HPE, incorporate the infringing microprocessors into their desktops, laptops, and server computers and therefore directly infringe the asserted claims of the 537 Patent, literally or under the doctrine of equivalents, for the reasons stated above.

85.     Auriga has been damaged by Defendants' infringement of the 537 Patent and is entitled to damages as provided for in 35 U.S.C. § 284, including reasonable royalty damages.

## COUNT FOUR: Infringement of U.S. Patent No. 8,957,479

86.     Auriga incorporates by reference each of the allegations in the paragraphs above and further alleges as follows:

87.     Defendants have directly infringed (literally and equivalently) at least one claim of the 479 Patent under 35 U.S.C. § 271(a) by making, using, offering to sell, and selling the Accused Products. Defendants have infringed multiple claims of the 479 Patent, including Claims 1-5.

88.     Intel directly infringes the 479 Patent. By way of example only, a representative Intel Accused Product, the Intel 14nm++ i5-8400 Coffee Lake BX80684I58400 Processor, infringes an exemplary claim of the 479 Patent, as in the description set forth in the claim chart attached hereto as Exhibit 11 which Auriga provides without the benefit of information about the accused device obtained through discovery.

89.     HPI directly infringes the 479 Patent by making, using, offering to sell, and selling HPI Accused Products that incorporate the Intel Accused Products. By way of example only, a representative HPI Accused Product, the ZBook 15v G5 Mobile Workstation, incorporates an Intel 14nm++ i5-9300H Coffee Lake Processor. Accordingly, HPI Accused Products infringe the 479 Patent in the same way as the Intel Accused Products as exemplified in Exhibit 11.

90.     HPE directly infringes the 479 Patent by making, using, offering to sell, and selling HPE Accused Products that incorporate the Intel Accused Products. By way of example only, a

representative HPE Accused Product, the ProLiant DL20 Gen 10 Server incorporates an Intel 14nm++ Xeon E-2224 Coffee Lake Processor. Accordingly, HPE Accused Products infringe the 479 Patent in the same way as the Intel Accused Products as exemplified in Exhibit 11.

91.     On information and belief, Intel has actively induced and continues to actively induce infringement of one or more claims of the 479 Patent, including but not limited to Claims 1-5, pursuant to 35 U.S.C. § 271(b). Such inducement includes without limitation, with specific intent to encourage the infringement, knowingly inducing third parties such as OEMs, including Defendants HPI and HPE, to incorporate the Intel Accused Products into desktop, laptop, and server computers, such as the HPI and HPE Accused Products. Intel advertises and encourages, through marketing and sales efforts, these entities to incorporate its infringing microprocessors in their products. For example, Intel's website states "Intel designs advanced, high-performance processors for every usage, including enterprise-scale servers, IoT devices, laptops, desktops, workstations, and mobile devices. Find the technology you need here." https://www.intel.com/content/www/us/en/products/processors.html; *see also, e.g.*, https://www.intel.com/content/www/us/en/products/docs/processors/core/10th-gen-processors.html; https://www.intel.com/content/www/us/en/benchmarks/intel-data-center-performance.html. Intel also encourages third parties to incorporate its infringing microprocessors by designing and packaging Intel's microprocessor products to be easily integrated into third party desktop, laptop, and server computers. *See, e.g.* https://www.intel.sg/content/www/xa/en/support/articles/000055173/processors.html?wapkw=socket%20information; https://www.intel.sg/content/www/xa/en/support/articles/000005670/processors.html.

92.     Intel has actual knowledge of the 479 Patent since at least the service upon Intel of this Complaint. By the time of trial, Intel will have known and intended (since receiving such notice)

that its continued actions would infringe and actively induce and contribute to the infringement of one or more claims of the 479 Patent.

93.     As a result of Intel's marketing, advertising, instruction, and sales, other entities, including HPI and HPE, incorporate the infringing microprocessors for their desktops, laptops, and server computers and therefore directly infringe the asserted claims of the 479 Patent, literally or under the doctrine of equivalents, for the reasons stated above.

94.     Auriga has been damaged by Defendants' infringement of the 479 Patent and is entitled to damages as provided for in 35 U.S.C. § 284, including reasonable royalty damages.

### COUNT FIVE: Infringement of U.S. Patent No. 8,234,594

95.     Auriga incorporates by reference each of the allegations in the paragraphs above and further alleges as follows:

96.     Defendants have directly infringed (literally and equivalently) at least one claim of the 594 Patent under 35 U.S.C. § 271(a) by making, using, offering to sell, and selling the Accused Products. Defendants have infringed multiple claims of the 594 Patent, including Claims 1-3, 5, 6, 7-9, 11, 12, and 13-17.

97.     Intel directly infringes the 594 Patent. By way of example only, a representative Intel Accused Product, the Intel 14nm++ i5-8400 Coffee Lake BX80684I58400 Processor, infringes an exemplary claim of the 594 Patent, as in the description set forth in the claim chart attached hereto as Exhibit 12 which Auriga provides without the benefit of information about the accused device obtained through discovery.

98.     HPI directly infringes the 594 Patent by making, using, offering to sell, and selling HPI Accused Products that incorporate the Intel Accused Products. By way of example only, a representative HPI Accused Product, the ZBook 15v G5 Mobile Workstation, incorporates an Intel

14nm++ i5-9300H Coffee Lake Processor. Accordingly, HPI Accused Products infringe the 594 Patent in the same way as the Intel Accused Products as exemplified in Exhibit 12.

99.     HPE directly infringes the 594 Patent by making, using, offering to sell, and selling HPE Accused Products that incorporate the Intel Accused Products. By way of example only, a representative HPE Accused Product, the ProLiant DL20 Gen 10 Server incorporates an Intel 14nm++ Xeon E-2224 Coffee Lake Processor. Accordingly, HPE Accused Products infringe the 594 Patent in the same way as the Intel Accused Products as exemplified in Exhibit 12.

100.    On information and belief, Intel has actively induced and continues to actively induce infringement of one or more claims of the 594 Patent, including but not limited to Claims 1-3, 5, 6, 7-9, 11, 12, and 13-17, pursuant to 35 U.S.C. § 271(b). Such inducement includes without limitation, with specific intent to encourage the infringement, knowingly inducing third parties such as OEMs, including Defendants HPI and HPE, to incorporate the Intel Accused Products into desktop, laptop, and server computers, such as the HPI and HPE Accused Products. Intel advertises and encourages, through marketing and sales efforts, these entities to incorporate its infringing microprocessors in their products. For example, Intel's website states "Intel designs advanced, high-performance processors for every usage, including enterprise-scale servers, IoT devices, laptops, desktops, workstations, and mobile devices. Find the technology you need here." https://www.intel.com/content/  www/us/en/products/processors.html; *see also*, *e.g.*, https://www.intel.com/content/      www/us/en/products/docs/processors/core/10th-gen-processors.html;      https://www.intel.com/content/www/us/en/benchmarks/intel-data-center-performance.html. Intel also encourages third parties to incorporate its infringing microprocessors by designing and packaging Intel's microprocessor products to be easily integrated into third party desktop, laptop, and server computers. *See, e.g.* https://www.intel.sg/content/www/xa/en/

support/articles/000055173/processors.html?wapkw=socket%20information;

https://www.intel.sg/content/www/xa/en/support/articles/000005670/processors.html.

101.    Intel has actual knowledge of the 594 Patent since at least the service upon Intel of this Complaint. By the time of trial, Intel will have known and intended (since receiving such notice) that its continued actions would infringe and actively induce and contribute to the infringement of one or more claims of the 594 Patent.

102.    As a result of Intel's marketing, advertising, instruction, and sales, other entities, including HPI and HPE, incorporate the infringing microprocessors for their desktops, laptops, and server computers and therefore directly infringe the asserted claims of the 594 Patent, literally or under the doctrine of equivalents, for the reasons stated above.

103.    Auriga has been damaged by Defendants' infringement of the 594 Patent and is entitled to damages as provided for in 35 U.S.C. § 284, including reasonable royalty damages.

**COUNT SIX: Infringement of U.S. Patent No. 8,901,738**

104.    Auriga incorporates by reference each of the allegations in the paragraphs above and further alleges as follows:

105.    Defendants have directly infringed (literally and equivalently) at least one claim of the 738 Patent under 35 U.S.C. § 271(a) and/or 271(g) by making, using, offering to sell, selling, and importing the Accused Products. Defendants have infringed multiple claims of the 738 Patent, including Claims 1, 4-8, and 19.

106.    Intel directly infringes the 738 Patent. By way of example only, a representative Intel Accused Product, the Intel 14nm++ i5-8400 Coffee Lake BX80684I58400 Processor, is made by a process that infringes an exemplary claim of the 738 Patent, as in the description set forth in the claim chart attached hereto as Exhibit 13 which Auriga provides without the benefit of information about the accused device obtained through discovery.

107.    HPI directly infringes the 738 Patent by making, using, offering to sell, selling, and importing HPI Accused Products that incorporate the Intel Accused Products. By way of example only, a representative HPI Accused Product, the ZBook 15v G5 Mobile Workstation, incorporates an Intel 14nm++ i5-9300H Coffee Lake Processor. Accordingly, HPI Accused Products infringe the 738 Patent in the same way as the Intel Accused Products as exemplified in Exhibit 13.

108.    HPE directly infringes the 738 Patent by making, using, offering to sell, selling, and importing HPI Accused Products that incorporate the Intel Accused Products. By way of example only, a representative HPE Accused Product, HPE ProLiant DL20 Gen10 Server incorporates an Intel 14nm++ Xeon E-2224 Coffee Lake Processor. Accordingly, HPE Accused Products infringe the 738 Patent in the same way as the Intel Accused Products as exemplified in Exhibit 13.

109.    On information and belief, Intel has actively induced and continues to actively induce infringement of one or more claims of the 738 Patent, including but not limited to Claims 1, 4-8, and 19, pursuant to 35 U.S.C. § 271(b). Such inducement includes without limitation, with specific intent to encourage the infringement, knowingly inducing third parties such as OEMs, including Defendants HPI and HPE, to incorporate the Intel Accused Products into desktop, laptop, and server computers, such as the HPI and HPE Accused Products. Intel advertises and encourages, through marketing and sales efforts, these entities to incorporate its infringing microprocessors in their products. For example, Intel's website states "Intel designs advanced, high-performance processors for every usage, including enterprise-scale servers, IoT devices, laptops, desktops, workstations, and mobile devices. Find the technology you need here." https://www.intel.com/content/www/us/en/products/processors.html; *see also, e.g.*, https://www.intel.com/content/www/us/en/products/docs/processors/core/10th-gen-

processors.html; https://www.intel.com/content/www/us/en/benchmarks/intel-data-center-performance.html. Intel also encourages third parties to incorporate its infringing microprocessors by designing and packaging Intel's microprocessor products to be easily integrated into third party desktop, laptop, and server computers. *See, e.g.* https://www.intel.sg/content/www/xa/en/support/articles/000055173/processors.html?wapkw=socket%20information; https://www.intel.sg/content/www/xa/en/support/articles/000005670/processors.html.

110.    Intel has actual knowledge of the 738 Patent since at least the service upon Intel of this Complaint. By the time of trial, Intel will have known and intended (since receiving such notice) that its continued actions would infringe and actively induce and contribute to the infringement of one or more claims of the 738 Patent.

111.    As a result of Intel's marketing, advertising, instruction, and sales, other entities, including HPI and HPE, incorporate the infringing microprocessors for their desktops, laptops, and server computers and therefore directly infringe the asserted claims of the 738 Patent, literally or under the doctrine of equivalents, for the reasons stated above.

112.    Auriga has been damaged by Defendants' infringement of the 738 Patent and is entitled to damages as provided for in 35 U.S.C. § 284, including reasonable royalty damages.

## COUNT SEVEN: Infringement of U.S. Patent No. 9,362,229

113.    Auriga incorporates by reference each of the allegations in the paragraphs above and further alleges as follows:

114.    Defendants have directly infringed (literally and equivalently) at least one claim of the 229 Patent under 35 U.S.C. § 271(a) by making, using, offering to sell, and selling the Accused Products. Defendants have infringed multiple claims of the 229 Patent, including Claims 1, 2, 6, 7, 8, and 9.

115.   Intel directly infringes the 229 Patent. By way of example only, a representative Intel Accused Product, the Intel 14nm++ i5-8400 Coffee Lake BX80684I58400 Processor, infringes an exemplary claim of the 229 Patent, as in the description set forth in the claim chart attached hereto as Exhibit 14, which Auriga provides without the benefit of information about the accused device obtained through discovery.

116.   HPI directly infringes the 229 Patent by making, using, offering to sell, and selling HPI Accused Products that incorporate the Intel Accused Products. By way of example only, a representative HPI Accused Product, the ZBook 15v G5 Mobile Workstation, incorporates an Intel 14nm++ i5-9300H Coffee Lake Processor. Accordingly, HPI Accused Products infringe the 229 Patent in the same way as the Intel Accused Products as exemplified in Exhibit 14.

117.   HPE directly infringes the 229 Patent by making, using, offering to sell, and selling HPE Accused Products that incorporate the Intel Accused Products. By way of example only, a representative HPE Accused Product, the ProLiant DL20 Gen 10 Server incorporates an Intel 14nm++ Xeon E-2224 Coffee Lake Processor. Accordingly, HPE Accused Products infringe the 229 Patent in the same way as the Intel Accused Products as exemplified in Exhibit 14.

118.   On information and belief, Intel has actively induced and continues to actively induce infringement of one or more claims of the 229 Patent, including but not limited to Claims 1, 2, 6, 7, 8, and 9, pursuant to 35 U.S.C. § 271(b). Such inducement includes without limitation, with specific intent to encourage the infringement, knowingly inducing third parties such as OEMs, including Defendants HPI and HPE, to incorporate the Intel Accused Products into desktop, laptop, and server computers, such as the HPI and HPE Accused Products. Intel advertises and encourages, through marketing and sales efforts, these entities to incorporate its infringing microprocessors in their products. For example, Intel's website states "Intel designs advanced, high-performance

processors for every usage, including enterprise-scale servers, IoT devices, laptops, desktops, workstations, and mobile devices. Find the technology you need here." https://www.intel.com/content/www/us/en/products/processors.html; *see also, e.g.*, https://www.intel.com/content/www/us/en/products/docs/processors/core/10th-gen-processors.html; https://www.intel.com/content/www/us/en/benchmarks/intel-data-center-performance.html. Intel also encourages third parties to incorporate its infringing microprocessors by designing and packaging Intel's microprocessor products to be easily integrated into third party desktop, laptop, and server computers. *See, e.g.* https://www.intel.sg/content/www/xa/en/support/articles/000055173/processors.html?wapkw=socket%20information; https://www.intel.sg/content/www/xa/en/support/articles/000005670/processors.html.

119.    Intel has actual knowledge of the 229 Patent since at least the service upon Intel of this Complaint. By the time of trial, Intel will have known and intended (since receiving such notice) that its continued actions would infringe and actively induce and contribute to the infringement of one or more claims of the 229 Patent.

120.    As a result of Intel's marketing, advertising, instruction, and sales, other entities incorporate the infringing microprocessors for their desktops, laptops, and server computers and therefore directly infringe the asserted claims of the 229 Patent, literally or under the doctrine of equivalents, for the reasons stated above.

121.    Auriga has been damaged by Defendants' infringement of the 229 Patent and is entitled to damages as provided for in 35 U.S.C. § 284, including reasonably royalty damages.

## PRAYER FOR RELIEF

Auriga prays for the following relief:

A.      A judgment in favor of Auriga that Defendants have infringed the 736, 932, 537, 479, 594, 738, and 229 Patents and that the 736, 932, 537, 479, 594, 738, and 229 Patents are valid, enforceable, and patent-eligible;

B.      A judgment in favor of Auriga that Defendant Intel has induced infringement and continues to induce infringement of one or more claims of the 736, 932, 537, 479, 594, 738, and 229 Patents;

C.      A judgment and order requiring Defendants to pay Auriga compensatory damages, expenses, and pre- and post-judgment interest for its infringement of the asserted patents, as provided under 35 U.S.C. § 284;

D.      A judgment and order requiring Defendants to provide an accounting and to pay supplemental damages to Auriga, including, without limitation, pre-judgment and post-judgment interest;

E.      A finding that this case is exceptional under 35 U.S.C. § 285, and an award of Auriga's reasonable attorney's fees and costs; and

F.      Any and all other relief to which Auriga may be entitled.

## DEMAND FOR TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Auriga demands trial by jury of all issues.

Date: August 25, 2020                    By:

**TENSEGRITY LAW GROUP LLP**

/s/   *William P. Nelson*
Matthew D. Powers (Bar No. 104795)
Paul T. Ehrlich (Bar No. 228543)
William P. Nelson (Bar No.196091)
Stefani C. Smith (Bar No. 251305)
TENSEGRITY LAW GROUP, LLP
555 Twin Dolphin Drive, Suite 650

Redwood Shores, CA 94065
Telephone:     (650) 802-6000
Facsimile:      (650) 802-6001
matthew.powers@tensegritylawgroup.com
paul.ehrlich@tensegritylawgroup.com
william.nelson@tensegritylawgroup.com
stefani.smith@tensegritylawgroup.com

*Attorneys for Plaintiff Auriga Innovations Inc.*